UNITED STATES of America,
Plaintiff–Appellee,

v.

Billy F. MARCH, a/k/a Joe Clark; "Blood," Defendant–Appellant.

No. 92–3343.

United States Court of Appeals,
Tenth Circuit.

July 9, 1993.

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Asst. Federal Public Defender, Denver, CO, for defendant-appellant.

Lee Thompson, U.S. Atty., and David M. Lind, Asst. U.S. Atty., Wichita, KS, for plaintiff-appellee.

Before McKAY, Chief Judge, and LOGAN and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Billy F. March appeals his convictions and sentence for four bank robberies, in violation of 18 U.S.C. § 2113(a). He argues that his confession was obtained in violation of the Fifth Amendment, that the district court improperly answered a question from the jury, and that he was wrongly denied a sentence reduction for acceptance of responsibility. Defendant also alleges a clerical error in the Judgment and Commitment Order, which the government does not contest.[1]

I

In the late summer and fall of 1991, four banks in Wichita, Kansas were robbed. On each occasion a single individual entered the bank, tossed a plastic bag at a teller, and ordered the teller to fill the bag. In three of the four robberies, the individual initially requested change from the teller before demanding money. Two of the banks recorded the robber on videotape, and the other two obtained 35mm photographs of the individual. After FBI agents distributed copies of one of the photos to Wichita law enforcement officers, they were informed that the person in the photo resembled defendant, who was in custody after having been arrested for a parole violation.

Two FBI agents interviewed defendant at the Sedgwick County jail. According to the agents, they read defendant his *Miranda* rights, pausing after each one to make sure that defendant understood. They also read a waiver of rights, asked defendant if he understood, and had defendant sign the waiver form. The agents then began a discussion with defendant, asking about his family, the woman he was living with, and other matters not directly related to the bank robberies. After twenty to thirty minutes, defendant asked why he was being questioned, and the agents showed him three bank surveillance photographs from the robberies. Defendant admitted that he was the individual in the photographs, and also admitted the fourth bank robbery, for which the agents had not brought a photograph.

Defendant argues that at this point he requested an attorney, and that the further questioning by the agents violated *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). At the suppression hearing, one of the agents testified as to what transpired:

Q: Okay. What happened after he went through details of all four bank robberies?

A: Well, Mr. March said—asked Agent Jobe and myself, "Do you think I need an attorney?" And I said, "Billy, you know, look, we advised you of your rights in the beginning. If you want an attorney, you know, we'll stop at any time. You have that right, you know, it's your call. We cannot advise you one way or the other." And Billy chose to continue talking.

Q: Okay. Did he make some expression that he was going to continue talking?

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9(c). The case is therefore ordered submitted without oral argument.

A: I said, "It's your choice. What do you want to do?["] He says, "Well, you know, go ahead ask me the questions."

Q: So he said, "Go ahead and ask me some questions"?

A: Yeah; he just led us—led us on, didn't say, "Stop, I want an attorney." You know. If he'd done that, we would have stopped.

Q: And what happened after—after he said, "Go ahead and ask me some questions"?

A: His words weren't, "Go ahead and ask me some questions." I said, you know, "Billy, what do you want to do here?"

Q: Okay.

A: "I mean, would you like to continue?" He—he said, "Go ahead."

Q: All right.

A: I said, "Okay, I mean, just so it's—so it's clear."

Q: All right.

A: We just continued. There wasn't much more. What I did was at that point got him to sign the back of the photographs.

II R. 14–15. Defendant subsequently signed a confession that the agents prepared, and the district court denied his motion to suppress it.

During its deliberations, the jury sent a number of written questions to the judge. Each question and possible answer was discussed with counsel for both parties, and defense counsel agreed with the court's answers to all but one question. Near the end of its deliberations, the jury asked: "Was there testimony to the fact that Billy March had legal representation during the questioning by the FBI?" I R.Supp. doc. 44, at 7. Defense counsel argued that the proper response was "no," because no such testimony had been presented. However, the district court instructed the jury, over defense counsel's objection, that the "question is irrelevant to the resolution of the issues before the jury." Id. at 8. The jury convicted defendant of all four bank robberies, but could not

reach a verdict on a charge of using a weapon in one of the crimes.[2]

At sentencing, defense counsel objected to the presentence report's failure to recommend a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, given defendant's confession. The district court rejected this argument, saying that although defendant did confess,

> when he was then indicted for the counts of the indictment, he denied everything and did put the United States to its burden as to each element, and to the extent the defendant claimed that the statements were not voluntary, nor truthful. I'm satisfied ... that [3E1.1] does not contemplate acquiescence in some acceptance and in the same breath put the government to the test at trial by reason of his plea of not guilty to each of the indictments.

III R. 197. On the advice of his lawyer, defendant refused to discuss the bank robberies with the probation officer who prepared the presentence report.

## II

Defendant first argues that the question he asked the FBI agent constituted a request for counsel, and that the subsequently procured confession is inadmissible because the investigators failed to honor this request. "In reviewing the denial of Defendant's motion to suppress evidence, the trial court's findings of fact are accepted unless clearly erroneous, and the evidence is considered in the light most favorable to the government." United States v. Amos, 984 F.2d 1067, 1073 (10th Cir.1993). In this particular situation, "[w]e review for clear error the district court's factual findings concerning the words a defendant used in invoking the right to counsel. Whether those words actually invoked the right to counsel is a legal determination, reviewed de novo." United States v. de la Jara, 973 F.2d 746, 750 (9th Cir.1992).

After a defendant has been arrested, he must be apprised of his rights before being questioned by the authorities. Mi-

---

2. The government alleged that defendant had used a toy gun in three of the robberies, but a real gun in the fourth, and so charged him with one count of use of a firearm during a crime of violence. This charge was subsequently dismissed with prejudice.

*randa v. Arizona,* 384 U.S. 436, 467–74, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966). If the defendant talks thereafter to the police, the burden is on the state to prove, by a preponderance of the evidence, defendant's waiver of his rights. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). To do so, the government must make two showings:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986). Here, defendant maintains that he cannot read, that when he signed the waiver form he could not have understood what he was signing, and that therefore he did not voluntarily relinquish his rights. The uncontradicted testimony of the agents, however, was that they recited the provisions of the waiver orally to defendant, that defendant indicated that he understood, and that he signed the form knowing what it contained. Thus, defendant's initial waiver was both informed and voluntary.

■ If at some point during questioning a defendant indicates that he wishes to speak to an attorney, "interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi,* 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990). When a defendant alleges that such a request was made and not honored by the authorities, the court must make two inquiries:

> First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discus-

sions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (citations omitted). We must determine here whether defendant's question constituted an invocation of his right to counsel,[3] an issue on which the Supreme Court has provided little guidance. In *Smith,* the Court explicitly refused to address it: "We do not decide the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself, nor do we decide the consequences of such ambiguity or equivocation." *Id.* at 99–100, 105 S.Ct. at 494–495. *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), is more helpful, stating that "[i]nterpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous." *Id.* at 529, 107 S.Ct. at 832. Most recently, the Court said that invoking the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" *McNeil v. Wisconsin,* — U.S. —, —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991).

Defendant's statement—"Do you think I need an attorney?"—did not constitute an unequivocal request for an attorney. The cases finding an unequivocal request for counsel involve much clearer demands than is present here. *See, e.g., Cannady v. Dugger,* 931 F.2d 752, 755 (11th Cir.1991) ("I think I should call my lawyer."); *Robinson v. Borg,* 918 F.2d 1387, 1391 (9th Cir.1990) ("I have to get me a good lawyer, man. Can I make a phone call?"), *cert. denied,* — U.S. —, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991); *Smith v. Endell,* 860 F.2d 1528, 1529 (9th Cir.1988) ("Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?"), *cert. de-*

---

**3.** At the suppression hearing, defendant testified that he asked for an attorney at the commencement of the interview, and that his request was unequivocal. The district court, however, credited the investigators' version of the interview, and we have no basis for rejecting this determination.

*nied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).

The two courts facing the particular question before us have split on whether defendant's query was an equivocal request for counsel or merely a request for advice from the agents. *See Towne v. Dugger,* 899 F.2d 1104, 1107, 1110 (11th Cir.) ("officer, what do you think about whether I should get a lawyer?" is equivocal request), *cert. denied,* 498 U.S. 991, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990); *Norman v. Ducharme,* 871 F.2d 1483, 1486 (9th Cir.1989) (asking "if he should see a lawyer" not a request), *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990); *see also de la Jara,* 973 F.2d at 750–51 (stating that *Norman* would control if defendant had asked "Should I call my lawyer?"). The various cases making the distinction between equivocal requests and statements that are not considered requests have held that the proper focus is on whether a defendant's statement evinces a contemplation of exercising the right to have an attorney present, or merely seeks a clarification of what his or her rights are.

In *United States v. Uribe–Galindo,* 990 F.2d 522 (10th Cir.1993), we held that the defendant's question—"If I want to stop answering questions, can I have an attorney present?"—was not an ambiguous request for counsel. *Id.* at 526. We viewed that question as seeking no more than a clarification of the right to an attorney, not as stating a desire to exercise it. Other recent cases finding no equivocal request for counsel include *Poyner v. Murray,* 964 F.2d 1404, 1410–11 (4th Cir.) ("Didn't you tell me I had the right to an attorney?"), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992); *United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir.1990) ("How long would it take if I want a lawyer, and would I have to stay in jail while I wait for a lawyer?"); *United States v. Scarpa,* 897 F.2d 63, 66 (2d Cir.) ("I don't have a lawyer, I'm going to get a lawyer, I don't know the guy's name."), *cert. denied,* 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990).

In contrast, in *United States v. Giles,* 967 F.2d 382, 385–86 (10th Cir.1992), we held that when the defendant asked when he would be given an opportunity to talk to an attorney, he was invoking his right to counsel. Such a question evidences a desire to invoke the right, not merely a lack of understanding concerning the right itself. Other cases finding equivocal requests are similar. *See, e.g., United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1472 (11th Cir.) ("I don't know if I need a lawyer, maybe I should have one, but I don't know if it would do me any good at this point"), *cert. denied,* —— U.S. ——, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992); *Robtoy v. Kincheloe,* 871 F.2d 1478, 1479 (9th Cir.1989) ("maybe I should call my attorney"), *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990); *Owen v. Alabama,* 849 F.2d 536, 537 (11th Cir.1988) (responding to *Miranda* warning about counsel by saying "I think I'll let y'all appoint me one").

When defendant in the case before us sought advice from his interrogators concerning whether he should have a lawyer present, the thought that perhaps it would be a good idea had obviously crossed his mind. We believe that whenever a suspect makes a statement or asks a question that appears to contemplate invocation of his right to counsel, as opposed to seeking a better understanding of what his rights are, that constitutes an equivocal invocation of the right to counsel.

Such an invocation requires the interrogating officers to take appropriate action. We agree with our sister circuits that when confronted with an equivocal request for counsel, the interrogating officers must cease all substantive questioning and limit further inquiries to clarifying the subject's ambiguous statements. *See Parker v. Singletary,* 974 F.2d 1562, 1572 (11th Cir.1992); *de la Jara,* 973 F.2d at 750; *Poyner v. Murray,* 964 F.2d 1404, 1411 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992); *United States v. Eaton,* 890 F.2d 511, 513–14 (1st Cir.1989), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *Terry v. LeFevre,* 862 F.2d 409, 412 (2d Cir.1988); *United States v. McKinney,* 758 F.2d 1036, 1044 (5th Cir. 1985). These clarifying questions must be purely ministerial, not adversarial, and can-

not be designed to influence the subject not to invoke his rights.

■ Here, immediately upon hearing defendant's question, the agents ceased questioning about the bank robberies, told defendant that they would stop the interrogation if he wanted an attorney, and properly answered his question by saying that it was his "call" and that they could not "advise [him] one way or the other." Only after defendant told the agents to "go ahead" did they recommence the questioning. This is the clarification required in the face of an ambiguous request for counsel, and the district court properly denied defendant's motion to suppress his subsequently obtained confession.

### III

■ Defendant next argues that the district court improperly instructed the jury in response to its inquiry, by telling it that whether counsel was present during defendant's interrogation was irrelevant. We review the legal propriety of the court's jury instructions de novo. *United States v. Barrera–Gonzales*, 952 F.2d 1269, 1271 (10th Cir. 1992). "Where a jury's query demonstrates that it is 'confused about a controlling legal principle,' the trial court must so instruct the jury as to eliminate the confusion." *United States v. Heid*, 904 F.2d 69, 71 (D.C.Cir.1990) (quoting *United States v. Walker*, 575 F.2d 209, 213 (9th Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 325 (1978)); *accord Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."). Although provision of additional instructions is generally within the discretion of the court, if they are tendered the jury must be "instructed in a way that there [is] no possibility that the conviction was based on an incorrect legal basis." *United States v. Zimmerman*, 943 F.2d 1204, 1214 (10th Cir.1991).

Defendant contends not only that the district court's instruction was erroneous, but that 18 U.S.C. § 3501(a) required an instruction to the jury "to give such weight to the confession as the jury feels it deserves under all the circumstances." Defendant never

sought such an instruction below, so we review only for plain error. Here, although defendant sought to suppress his confession, his argument was not that the statement was involuntary in fact, but only that it was obtained in violation of *Edwards*. Similarly, at trial, defense counsel alluded to defendant's illiteracy as affecting his ability to waive his rights, but did not seriously contest the agent's testimony that defendant received an oral explanation of his rights. Consequently, no serious question of factual voluntariness was raised at trial, so no § 3501(a) instruction was required. "[O]nly if relevant evidence sufficient to raise a genuine factual issue concerning the voluntariness of a confession is presented by the defendant is the trial court obligated to instruct the jury concerning the weight to be accorded defendant's statements." *United States v. Bondurant*, 689 F.2d 1246, 1250 (5th Cir.1982).

This is not to say, however, that the district court's response to the jury's question was correct. In effect, the court instructed the jury that the circumstances surrounding defendant's confession were irrelevant to the determination of guilt or innocence. This was error. Under the Due Process Clause,

> evidence about the manner in which a confession was secured will often be germane to its probative weight, *a matter that is exclusively for the jury to assess....* [T]he physical and psychological environment that yielded the confession can ... be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise ... unworthy of belief."

*Crane v. Kentucky*, 476 U.S. 683, 688–89, 106 S.Ct. 2142, 2145–46, 90 L.Ed.2d 636 (1986) (emphasis added) (quoting *Lego v. Twomey*, 404 U.S. 477, 485–86, 92 S.Ct. 619, 624–25, 30 L.Ed.2d 618 (1972)). The jury was the ultimate arbiter of the weight to be given the confession, and was improperly instructed to

disregard the circumstances surrounding its making.

Nonetheless, "the erroneous ruling of the trial court is subject to harmless error analysis." *Id.* 476 U.S. at 691, 106 S.Ct. at 2147.[4] In performing harmless error review, we ask "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana,* ─ U.S. ─, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In addition to the confession, the government presented the surveillance photographs and eyewitness identifications by the various tellers who had been robbed. The confession certainly corroborated this evidence, but the weight accorded it by the jury could not possibly have affected the outcome, especially given that the defense made no issue of the circumstances of the confession during the trial. We hold that defendant was not prejudiced by the erroneous instruction, and that the guilty verdict was unattributable to the error as a matter of law.

## IV

■ Defendant argues that he was improperly denied a two-level reduction at sentencing for acceptance of responsibility, in light of his confession. We review the district court's decision not to grant the reduction under the clearly erroneous standard. *United States v. Garcia,* 987 F.2d 1459, 1461 (10th Cir.1993). Indeed, "[b]ecause of our deference to the trial court's assessment of credibility and the clearly erroneous standard we apply, the judgment of the district court on this issue is nearly always sustained." *United States v. Whitehead,* 912 F.2d 448, 451 (10th Cir.1990).

■ "Under the sentencing guidelines, a defendant is entitled to a two-level reduction for acceptance of responsibility if he 'clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his offense.' " *Garcia,* 987 F.2d at 1461 (quoting U.S.S.G. § 3E1.1). The burden is on the defendant to prove, by a preponderance of the evidence, his entitlement to the sentence reduction. *Amos,* 984 F.2d at 1073. As defendant correctly argues, the decision to go to trial, in and of itself, does not foreclose his eligibility for the reduction. *United States v. Rodriguez,* 975 F.2d 999, 1009 (3d Cir.1992); U.S.S.G. § 3E1.1, comment. (n. 2). However, situations in which a defendant can demonstrate acceptance of responsibility and still go to trial will be "rare." *Id.* The example given for such a case in the application note involves preserving issues that do not relate to factual guilt. The instant case does not fall within that exceptional situation. In addition to challenging his confession at trial defendant refused to discuss the circumstances of the crimes with the probation officer preparing the presentence report. Defendant argues that to do so would have required him to incriminate himself and would have destroyed the basis for his appeal.

A defendant who is not awarded the § 3E1.1 reduction is not being penalized; the reduction is available only to those who take full responsibility for the actions for which they have been convicted. We have previously rejected a self-incrimination challenge to § 3E1.1, *see United States v. Trujillo,* 906 F.2d 1456, 1461 (10th Cir.), *cert. denied,* 498 U.S. 962, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990), and will not reiterate the reasons here. As to preservation of defendant's challenge to his confession, he could have entered a conditional guilty plea pursuant to Fed. R.Crim.P. 11(a)(2). Although acceptance of such pleas is at the discretion of the court and requires approval of the government,

---

4. We conduct harmless error review cognizant of our responsibility not to substitute our judgment for that of a properly instructed jury:

> From presuming too often all errors to be "prejudicial," the judicial pendulum need not swing to presuming all errors to be "harmless" if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty. In view of the place of impor-

tance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be.

*Bollenbach,* 326 U.S. at 615, 66 S.Ct. at 406.

*United States v. Davis,* 900 F.2d 1524, 1527 (10th Cir.), *cert. denied,* 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990), defendant does not argue that he was rebuffed in an attempt to enter a conditional plea. We cannot hold that the district court's refusal to grant a two-level reduction under U.S.S.G. § 3E1.1 was clearly erroneous.

### V

Although defendant was convicted of violating 18 U.S.C. § 2113(a), the Judgment and Commitment Order states a violation of both that subsection and § 2113(d).[5] The government agrees that the reference to § 2113(d) was error requiring correction. We therefore AFFIRM, except that we remand to the district court for the purpose of correcting the Judgment and Commitment Order by eliminating the erroneous reference pursuant to Fed.R.Crim.P. 36.

**5.** Defendant was originally charged under both subsections, but the government dismissed the subsection (d) charges on the first day of trial.