**UNITED STATES, Appellee,**

v.

**Donald W. McLAREN, Staff Sergeant, U.S. Air Force, Appellant.**

No. 68,117.

CMR No. 28996.

U.S. Court of Military Appeals.

Argued May 10, 1993.

Decided Sept. 28, 1993.

Certiorari Denied Feb. 22, 1994.

See 114 S.Ct. 1056.

For Appellant: *Captain David D. Jividen* (argued); *Colonel Terry J. Woodhouse* and *Major Mary C. Yastishock* (on brief).

For Appellee: *Captain Carlos L. McDade* (argued); *Colonel Richard L. Purdon, Lieutenant Colonel Jeffery T. Infelise, Major Paul H. Blackwell, Jr.* (on brief).

*Opinion of the Court*

GIERKE, Judge.

Pursuant to his conditional pleas of guilty, appellant was convicted of attempted rape, rape, sodomy (2 specifications), and committing indecent acts with his stepdaughters (3 specifications), in violation of Articles 80, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, 925, and 934, respectively. The general court-martial, composed of officer and enlisted members, sentenced appellant to a dishonorable discharge, 35 years' confinement, forfeiture of $424.00 pay per month for 420 months and reduction to E–1. The convening authority reduced the confinement to 15 years pursuant to a pretrial agreement but otherwise approved the sentence. The Court of Military Review affirmed the findings and the approved sentence. 34 MJ 926 (1992)

This Court granted review of the following issues:

I

WHETHER APPELLANT'S FIFTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE MILITARY JUDGE FAILED TO SUPPRESS APPELLANT'S STATEMENTS TO THE AFOSI [AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS] AFTER HE STATED "I THINK I WANT A LAWYER" OR WORDS TO THIS EFFECT AND THE AFOSI FAILED TO CEASE THEIR QUESTIONING OR CLARIFY APPELLANT'S REQUEST FOR COUNSEL.

II

WHETHER THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL DETRIMENT OF APPELLANT, WHEN HE DENIED THE DEFENSE CHALLENGE TO A COURT MEMBER, CAPTAIN JAMES, WHO REFUSED TO CONSIDER THE PUNISHMENT OPTION OF "NO PUNISHMENT."

I. *Admissibility of Confession*

A. *Factual Background*

On April 15, 1990, OSI Special Agent (SA) Sarantis received a complaint that appellant was sexually abusing the older of his two stepdaughters. On April 16, SA Sarantis interviewed both stepdaughters at the base clinic. On April 17, SA Sarantis went to appellant's on-base quarters, intending to advise Mrs. McLaren of the allegations and ask her to accompany him to the base clinic. Both appellant and Mrs. McLaren answered the door. SA Sarantis told Mrs. McLaren that he "needed to speak with her in reference to her daughter [A] who was at the clinic. [He] explained that [A] was not hurt but that an incident had come up and [he] needed to speak to her and [A] at the clinic." Mrs. McLaren accompanied SA Sarantis and SA Bianco to the clinic. Appellant followed in a separate car. In the parking lot of the base clinic, appellant "wanted to know what was going on." SA Sarantis told him, "No, we'll talk to you later." Later that same day SA Sarantis and SA Bianco returned to appellant's quarters and Sarantis said, "Okay, we can have that conversation now. Let's go over to the clinic."

Appellant accompanied SA Sarantis and SA Bianco to the clinic in an OSI vehicle, and they went to a conference room inside the clinic. SA Sarantis advised appellant of his rights, including his right to counsel, and informed him that he was suspected of rape, carnal knowledge, and assault with a deadly weapon. When SA Sarantis asked

appellant if he wanted a lawyer, appellant responded, "Not at this time." When asked if he wanted to make a statement, appellant indicated that he wanted to talk.

After a few introductory questions, SA Sarantis steered the conversation toward the allegations of sexual abuse. SA Sarantis testified, "As I was coming right up to it, he began to well up inside. He came up and his eyes were filling full of water. He just kind of—from the outside it looked as if he was about to burst, just as we were there." SA Sarantis asked appellant when he "first had sex with" his older step-daughter. Appellant replied, "These things happen." Agent Sarantis then repeated the question. Appellant then looked down and said something to the effect, "I think I want a lawyer," or "I think I need to talk to a lawyer." SA Sarantis responded, "Well, yes, these charges seem—are serious." SA Bianco said, "Yes, this is a decision that you'll have to make. We can't force you to stay here. You need to decide what you want to do."

SA Sarantis testified that after a brief pause, without further questions or comments from the two special agents, appellant "began talking again." SA Bianco testified that, when appellant began talking again, he responded to SA Sarantis' most recent question, saying, "It just happened" and shaking his head, "Yes." The interview then resumed, and appellant orally confessed. His oral confession was then typed, signed, and sworn to.

Appellant testified on the motion to suppress as follows:

> It was after he asked me—Mister Sarantis asked me about when was the first time I had sex with [A] and I replied, "Whoa, I want a lawyer," and he asked me why and I told him because he was accusing me of having sex with [A]. And then when he—he said that "We were not accusing you. We knew it was true. We have statements. We need the details." I looked over at Mister Bianco and he was scribbling out.

Appellant testified further that he "sat there for a few minutes and Mister Saran-

tis asked me again about —— 'We need to know when was the first time you had sex with [A].'"

The military judge denied appellant's motion to suppress his confession because "[a]fter a pause, and apparent reflective deliberation about his verbalized thoughts concerning his perceived need for a lawyer, [appellant] resumed the interrogation process by proceeding to answer the incriminatory question previously posed." Additionally, he found that "[t]he agents reasonably construed this resumption by the accused as an election by him not to then act on his perceived need, if any, for a lawyer."

The Court of Military Review found that appellant's statement, "I think I want a lawyer," or "I think I need to talk to a lawyer" was at most "an equivocal request for counsel." 34 MJ 926, 929 (1992). That court further held that appellant re-initiated the interrogation following a period of silence after SA Bianco told him it was his decision as to how to proceed. The court below concluded its analysis and holding as follows:

> In sum, after [appellant] uttered his equivocal reference to counsel, the investigators ceased their interrogation. Their subsequent comments were neutral and provided [appellant] the opportunity to clarify his vague statement. [Appellant] reinitiated the interrogation by resuming the conversation, even though he did not explicitly clarify his earlier reference to counsel. Focusing on this narrow factual scenario, we hold that where a suspect voluntarily reinitiates discussions related to the investigation, he effectively clarifies the earlier ambiguous request for counsel. At that point, investigators have no further obligation to pursue the suspect's indecision and may resume the interview. [Appellant's] confession was otherwise voluntary and properly admitted in evidence against him. His Fifth Amendment rights were not violated.

34 MJ 931–32.

## B. *Discussion*

■ Appellant argues that: (1) his request for counsel ("I think I want a law-

yer") was not equivocal; (2) assuming *arguendo* that his request for counsel was equivocal, the investigators should have considered the right to counsel invoked and ended the interrogation rather than seek clarification of appellant's equivocal request for counsel; and (3) assuming *arguendo* that the investigators should have clarified appellant's equivocal request for counsel, they failed to do so in this case.

The Government argues that appellant's request for counsel was equivocal. According to the Government, the mere mention of the term "counsel" or "attorney" is not enough to require termination of a suspect's questioning. *See United States v. Whitehead*, 26 MJ 613, 617 (ACMR 1988) ("Maybe I should get a lawyer" not unequivocal request for lawyer); *United States v. Brown*, 27 MJ 614 (ACMR 1988), *aff'd*, 28 MJ 232 (CMA 1989) (accused's request to speak to prosecuting attorney in private prior to interview not an unequivocal request for counsel), *cert. denied*, 492 U.S. 907, 109 S.Ct. 3217, 106 L.Ed.2d 567 (1989); *United States v. Fouche*, 833 F.2d 1284, 1286–87 (9th Cir.1987) (I "might want to talk to a lawyer" not an unequivocal request for lawyer), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). According to the Government, appellant confessed after making a silent reflection on his ambiguous request for counsel. The Government argues that appellant's subsequent unsolicited discussion of the allegations amounted to a voluntary reinitiation of the interview and waiver of his right to counsel. We hold that the military judge did not abuse his discretion by admitting appellant's confession.

■ An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). "[W]hen counsel is requested, interrogation must cease, and officials may not reinitiate inter-

rogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990). Once an accused has invoked his right to counsel, the police may not conduct "further interrogation" about the offenses "until counsel has been made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

While the words, "I think," used by appellant in this case, could render a request for counsel equivocal, they are not in themselves dispositive. The language of appellant's comment must be evaluated in the context of the circumstances in which it was spoken. Appellant's comment was in response to the first accusatory question in this interview, indicating that the question caused him to reconsider his earlier waiver of counsel (when he responded, "Not at this time," to the questions regarding counsel).

■ Nevertheless, even if we assume without deciding that appellant's request for counsel was equivocal, the OSI agents had only two choices: (1) terminate the interview or (2) conduct limited questioning to clarify appellant's comment. *United States v. Davis*, 36 MJ 337, 341 (CMA), *cert. granted*, — U.S. —, 114 S.Ct. 379, 126 L.Ed.2d 329 (1993). Because they did neither, the situation was the same as if appellant had unequivocally requested a lawyer. Accordingly, appellant's responses to further questioning about the offenses were admissible only if "he (a) initiated further discussion with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984). The court below held that appellant voluntarily initiated further conversation with the OSI agents, effectively clarifying and waiving his earlier request for counsel. 34 MJ at 931.

■ The Government had the burden of establishing that appellant voluntarily resumed the interrogation once he invoked

his right to counsel, even if that invocation was equivocal. *See Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972) (prosecution has burden of establishing admissibility of confession by preponderance of evidence); *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966) ("If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.").

After appellant mentioned a lawyer, the agents told him they could not force him to stay in the interview room, and they told him he needed to decide what he wanted to do. They asked no further questions. After a brief pause, appellant answered the question SA Sarantis had asked before appellant mentioned a lawyer.

The military judge found that appellant voluntarily reinitiated the conversation and waived his previously invoked right to counsel. He initiated the conversation by talking after the agents told him that they could not force him to stay and that he needed to make a decision; he waived his previously invoked right to counsel by answering the previously asked question which had preceded his mention of a lawyer. We are satisfied that appellant's voluntary reinitiation of the interview and implied waiver of his previously invoked right to counsel were sufficient to satisfy *Miranda v. Arizona* and *Smith v. Illinois*, both *supra*. Accordingly, we agree with the Court of Military Review that the military judge did not abuse his discretion in admitting the challenged statement.

## II. *Challenge for Cause*

### A. *Factual Background*

When trial moved on to the challenge procedures, defense counsel focused on the court members' attitudes toward a sentence of "no punishment." The maximum period of confinement for the offenses to which appellant had pleaded guilty was life

imprisonment. Appellant had negotiated a pretrial agreement limiting confinement to 15 years.

Prior to *voir dire* of the court members, the military judge gave extensive preliminary instructions, including the following:

The essential question concerning your qualification as a court member is simply whether or not you can render an impartial decision based solely upon the evidence and law presented to you in this court. You should have no predisposition toward one side or the other, nor should you have a predisposition as to the kind or amount of punishment which might be appropriate for the offenses of which the accused has been convicted.

In his *voir dire* of the members, the military judge asked, "Will you avoid forming an opinion as to the kind or amount of punishment which may be appropriate until all the evidence and law has been presented to you?" All members responded in the "affirmative." He then asked, "And will each agree to follow the law as I give it to you?" Again, all members responded in the "affirmative."

During his general *voir dire*, defense counsel questioned the members as follows:

Would you all agree with me that what you have in front of you and what Sergeant McLaren has pled guilty to and been found guilty of are some of the most serious offenses known to the law? An affirmative response from all members.

The reason why I ask you that is that at this point in the trial, according to the judge's instructions, you are not to have any particular sentence in mind, either lenient or very severe, or any kind of a sentence. My next question is a very serious question. It's not facetious in any way. None of my questions will be. But at one point in the trial, the judge is going to tell you that no punishment is an option. With regard to whether that is a reasonable or a ridiculous idea at this point in time, without having any presentation of evidence, is there anyone on

this jury that can honestly and seriously consider no punishment just by what you've read in front of you?

Defense counsel individually polled the members, and all but two of the eleven, including Captain James, responded, "No." Defense counsel then asked:

Okay. Now, for those of you who have said no, let me explain a little bit further now. The judge will give you instructions that you have to consider all lawful sentences and even no punishment. And he may further explain to you that no punishment really is a possibility here. Without seeing any evidence—now, I'm not saying that once you saw evidence you might change your mind. You might say—you know, who knows what might come before you. Would that change any of the people who said no to possibly there is a real possibility they just might adjudge or vote for no punishment? Would anybody change their mind just from what you have in front of you at this point?

Defense counseled indicated that all members responded in the negative to this question.

During individual *voir dire*, defense counsel questioned Captain James further as follows:

Q. Very briefly, Captain James, I just want to get something clear on the response to the question about no punishment. Do you remember when I was asking you about that?

A. Yes, Sir.

Q. Now, even though that with what you've got in front of you might not seem to be a very reasonable idea, without hearing anything, could you consider it in the deliberation room or would that not be possible at all?

A. Based on what you gentlemen have already told me today as far as the individual admitting that he did do what's in front of me, no, I could not consider no punishment in this case.

Q. Could you consider something other than no punishment that may not be very severe?

A. I'd have to review the facts in this.

Q. Okay, based on review of the facts, based on what evidence you hear, medical and otherwise?

A. That's right.

\* \* \*

(Question by the military judge:)

Q. As I gathered, you have no problem in believing that you can decide an appropriate sentence, in other words, discuss and deliberate with the other members and vote on a[n] appropriate sentence, based upon the facts presented about the accused and the offenses and the law as I give it to you in this court?

A. That's correct, Sir, I do.

MJ: Okay. Any other questions?

DC: Yes, Sir, there is.

(Questions by the defense counsel:)

Q. Now, Captain James, you certainly are expected to take your knowledge of the world and your own moral convictions and so forth into the deliberation room. You don't go in there in a vacuum. But do you have some particular moral conviction that would inflame your passions that would lead you to a severe sentence that you may want to tell us before we continue?

A. No, only that what you have written in front of me, I do not consider as appropriate or right.

Q. Neither do I, Sir, but that's ——

A. That's where I'm coming from.

DC: That's it. Okay, thank you.

Neither the military judge nor either counsel inquired further.

During his sentencing instructions, the military judge instructed the members, "There is no minimum punishment which must be imposed." The sentence worksheet included a sentence: "To no punishment."

Defense counsel did not object or request further instructions on the option of "no punishment." During his closing argument on sentence, defense counsel conceded that a sentence to no punishment in this case would be "ridiculous."

## B. *Discussion*

Appellant contends that the military judge committed prejudicial error by denying a challenge for cause against Captain James. We hold that the military judge did not abuse his discretion.

RCM 912(f)(1)(N), Manual for Courts-Martial, United States, 1984, provides that a member will be excused for cause when the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This ground for challenge is intended to cover situations where the member "has an inelastic opinion concerning an appropriate sentence for the offenses charged." RCM 912(f)(1)(N), Discussion. RCM 912(f)(3) provides, "The burden of establishing that grounds for a challenge exist is upon the party making the challenge."

We have long recognized that "challenges for cause are to be liberally granted." *United States v. Glenn*, 25 MJ 278, 279 (CMA 1987). At the same time, we have recognized the military judge's superior position in evaluating the demeanor of court members; therefore, we have granted great deference on appeal to, and will not reverse, a ruling on a challenge for cause absent a clear abuse of discretion. *United States v. Dean*, 5 USCMA 44, 17 CMR 44 (1954). We recently set out the standards regarding challenges for military judges and appellate courts in *United States v. White*, 36 MJ 284, 287 (CMA 1993) as follows: "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate."

In evaluating challenges for cause based on claims of an inelastic attitude, we have held that an unfavorable inclination toward an offense is not automatically disqualifying. *See United States v. Bannwarth*, 36 MJ 265, 267–68 (CMA 1993) (no

place in Air Force for drug users); *United States v. Reynolds*, 23 MJ 292 (CMA 1987) (strong distaste for barracks larceny); *United States v. Cosgrove*, 1 MJ 199 (CMA 1975). "[T]he test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions." *United States v. McGowan*, 7 MJ 205, 206 (CMA 1979).

We have also observed that a member's responses to "artful, sometimes ambiguous" questioning do not necessarily require that a challenge for cause be granted. *United States v. Tippit*, 9 MJ 106, 108 (CMA 1980). This case represents the epitome of artful questioning and inaccurate response. Defense counsel first obtained the agreement of the entire panel that his client had pleaded guilty to "some of the most serious offenses known to the law." Next he suggested that a sentence of no punishment might be an unreasonable idea. Finally, he closed the trap by asking Captain James if, without hearing any evidence, he could accept defense counsel's admittedly unreasonable suggestion and vote for no punishment.

The military judge clarified Captain James' response by asking Captain James if he could adjudge an "appropriate sentence, based upon the facts presented about the accused and the offenses and the law as I give it to you in this court." Captain James unequivocally responded that he could. What defense counsel's artful questioning established was that Captain James could not comprehend how appellant's offenses, in an evidentiary vacuum, could warrant no punishment. What the military judge's questioning established was that Captain James would follow the law.

Although the military judge could have done more to clarify Captain James' views, he did establish that Captain James' difficulty with imagining how such an apparently serious offense could warrant no punishment would yield to the evidence and the law. Accordingly, we are satisfied that the

military judge did not abuse his discretion by denying the challenge for cause.*

### III. *Decision*

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and CRAWFORD concur.

SULLIVAN, Chief Judge (concurring in part and in the result):

I concur with Judge Gierke's excellent opinion on Issue II. On Issue I, I concur in the result reached but not the path to it. In my view, and in the view of the Court of Military Review, 34 MJ 926, 929 (AFCMR 1992), appellant's statement, "I think I want a lawyer," was "an equivocal request for counsel." Once appellant made that statement, the Office of Special Investigations (OSI) agents ceased all substantive questioning and limited their comments to clarifying appellant's ambiguous statement. 38 MJ at 114. The record also supports the conclusion that appellant clarified his intentions regarding a request for counsel. *See United States v. March*, 999 F.2d 456 (10th Cir.1993). Without any pressure from the OSI agents and without further questioning regarding the suspected offenses, appellant continued to answer the previously asked question. I agree with the court in *March* that "[t]his is the clarification required in the face of an ambiguous request for counsel...." 999 F.2d at 461.

WISS, Judge (concurring in part and dissenting in part):

I agree with the majority's treatment of the second issue. I agree, as well, with its analysis of the first issue that leads it to conclude that appellant's statement in issue was *at least* an equivocal request for a lawyer (*see Cannady v. Dugger*, 931 F.2d 752, 755 (11th Cir.1991) (" 'I think I should call my lawyer' was an *unequivocal* request for counsel" (emphasis added)); *see generally Connecticut v. Barrett*, 479 U.S. 523, 529, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987) ("broad, rather than a narrow, interpretation [should be given] to a defendant's request for counsel")); that the agent's only choices at that point were to either "(1) terminate the interview or (2) conduct limited questioning to clarify appellant's comment" (*United States v. Davis*, 36 MJ 337, 341 (CMA), *cert. granted,* —— U.S. ——, 114 S.Ct. 379, 126 L.Ed.2d 329 (1993)); that what the agents in fact did was "neither"; ** and that, accordingly, "the situation was the same as if appellant had unequivocally requested a lawyer." 38 MJ at 115. From that point on, however, I disagree with the reasoning reflected in the majority opinion, so I dissent from the resolution of that issue.

Succinctly, I believe that what the agents said and did following appellant's statement about a lawyer was intended as, and was in fact, an encouragement to keep talking; as such, appellant's ultimate acquiescence in continuing the interview cannot lawfully be viewed as being an initiation by him, so the continued questioning was unlawful. *See Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489

---

* I would have substantial misgivings about holding that a military judge abused his discretion by refusing to excuse a court member who could not in good conscience consider a sentence to no punishment in a case where all parties agree that a sentence to no punishment would have been well outside the range of reasonable and even remotely probable sentences.

** The Chief Judge is of the view that appellant's statement was an equivocal or ambiguous request for an attorney and that the agents' statements and conduct were no more than a permissible effort to clarify the equivocation, citing *United States v. March*, 999 F.2d 456 (10th Cir. 1993). *March* is easily distinguishable in both respects.

The suspect's relevant response there was, "Do you think I need an attorney?" Such a question obviously indicates that the suspect is *contemplating* the exercise of the right, as the Court of Appeals recognized; but it does not fairly imply that the suspect has *decided* to exercise the right. I do not believe the same can be said of appellant's response: "I think I want a lawyer," or "I think I need to talk to a lawyer." The court in *Cannady v. Dugger*, 931 F.2d 752, 755 (11th Cir.1991), held that a virtually identical response "was an *unequivocal* request for counsel" (emphasis added), and I think there is much to be said for that conclusion.

(1990); *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981).

In order to more sharply focus the basis for this judgment, I pose the following hypothetical that parallels the fact pattern of this case except that the invocation of the right to a lawyer is absolutely unequivocal:

> Interrogator: We have just read you your rights, and now we want to talk to you about our suspicions that you have raped and otherwise sexually molested your stepdaughters. Do you want a lawyer?
>
> Suspect: Not at this time.
>
> Interrogator: All right. Let's begin by my asking you ... [follows is a series of relatively innocuous questions and answers that lead into the allegations of sexual abuse of his stepdaughters].
>
> Interrogator: When did you first have sex with your older daughter?
>
> Suspect: [Visibly emotionally distraught] These things happen.
>
> Interrogator: I'd like to know, when did you first have sex with your older daughter?
>
> Suspect: I want a lawyer before I go any further with this questioning—I want a lawyer.

Second, the agents' response in *March*—where the suspect had *asked* them *whether* he needed a lawyer—certainly was no more than a fair effort to clarify whether he had made a decision and, if so, what it was. I believe that an agent's comments to the effect that the suspect *will have to decide whether he wants a lawyer* is a fair effort to clarify a *question* posed by the suspect like the one in *March*; it is *more* than that when the suspect's response is an affirmative *statement* showing at least a contemplation of the need for a lawyer, like the one in this case.

These agents had appellant on the ropes. He was distraught; he obviously felt overwhelming guilt; and he was on the virtual brink of an emotional outpouring of grief—and evidence.

> Interrogator: Well, yes, these charges seem—are serious.
>
> Interrogator # 2: Yes, this is a decision you'll have to make. We can't force you to stay here. You need to decide what you want to do.
>
> [Brief pause]
>
> Suspect: It just happened.
>
> [Etc.]

In this context of an unquestionably unequivocal assertion of his right to the presence of a lawyer, I believe it is clear that the comments and the pause by the agents at a minimum are an effort to provide the suspect an opportunity to reconsider the invocation and, more realistically, are a psychological encouragement to do so and to continue talking. That is illegal, *Edwards v. Arizona, supra.* Such a tactic is likewise illegal in the context of the case at bar, where "the situation was the same as if appellant had unequivocally requested a lawyer." 38 MJ at 115. *See generally Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) (prosecution has burden to prove by preponderance of the evidence that defendant waived rights).

Suddenly, there was an expression of a wish for a lawyer. Faced with the desire to do everything legally possible to keep appellant talking, I believe that unfortunately they crossed the line of the legally possible: Instead of honoring what might well be viewed as an unequivocal counsel request or instead of limiting themselves to the ministerial clarification of whether appellant was equivocally expressing a wish for an attorney (a mechanical process), they proceeded with words and deeds that were designed to induce appellant to reconsider his rights' invocation (a cognitive process). *See generally United States v. March,* 999 F.2d at 461 ("These clarifying questions must be purely ministerial, not adversarial, and cannot be designed to influence the subject not to invoke his rights.").