13 F.3d 408
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis Ray WOODWARD, Defendant-Appellant.
 No. 93-3123.
 United States Court of Appeals, Tenth Circuit.
 Dec. 2, 1993.
 
 Before TACHA, BALDOCK, and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Defendant Dennis Ray Woodward appeals his conviction and sentence for maliciously damaging or destroying by fire a building used in interstate commerce, 18 U.S.C. 844(i). We have jurisdiction under 28 U.S.C. 1291 and 18 U.S.C. 3742.
 
 
 2
 The evidence at trial established the following facts. Just before midnight on March 29, 1992, a fire was discovered at the Burlingame City Hall ("City Hall"). Approximately five hours later the fire was extinguished. Over the next two days, Fire Marshall Dick Blevins investigated the fire scene and determined that the fire was intentionally set with computer paper, toilet paper, and other combustible paper products which were used as trailers to direct the fire from the basement, up the stairs to the clerk's office, and then into the City Council Chambers.
 
 
 3
 During the investigation, City Police Chief Roger Etzelmiller interviewed individuals observed in the downtown area the morning of the fire. Defendant was one of those interviewed. At that time, Defendant said he and his companion Charlie Cox had gone downtown to see the fire.
 
 
 4
 A few days later, Defendant confessed to his former brother-in-law, Michael Jackson, that he was the arsonist. Jackson testified at trial that Defendant confessed to him that on the evening of March 29, 1992, he and Cox kicked in the door of the basement of City Hall, and entered through the library area to look for money. Finding none, Defendant got angry and decided to burn the building down. Defendant described to Jackson how he and Cox ransacked the Council Chambers and the clerk's office and then strung computer paper and toilet paper throughout the main floor. Defendant then lit the paper with a Camel cigarette lighter which he had taken from the desk of city employee Cheryl Holloway. Defendant showed Jackson the lighter that he used.
 
 
 5
 On April 9, 1992, Defendant confessed his role in the arson to his wife. On April 15, 1992, Defendant's wife gave a tape-recorded interview to Blevins in which she described how her husband and Cox had set the fire at City Hall by using computer paper to direct the fire from the basement up the stairs to the clerk's office. Defendant's wife also related that Defendant had told her that he took a Camel lighter from an employee's desk, used it to start the fire, and then left with the lighter. She also stated that Defendant had, in her presence, removed the Camel wrapper from the lighter to produce a plain white lighter. Defendant's wife's tape-recorded interview was played at trial.
 
 
 6
 Jackson agreed to assist the authorities, and on April 21, 1992, using a concealed tape recording device, recorded Defendant admitting to setting fire to City Hall. On the tape, Defendant again related how he and Cox had started the fire. Defendant also explained that he and Cox had gained admittance to the basement of the City Hall with one kick of the door, and Defendant had wiped his footprint from the door with a wet rag. Defendant was arrested later that day on related charges. On the same day, authorities searched Defendant's car and recovered the Camel lighter, now without the Camel wrapper, that had been taken from Ms. Holloway's desk.
 
 
 7
 Defendant was arrested by Police Chief Etzelmiller. Etzelmiller testified at trial that he knew the Fire Marshall had an arrest warrant for Defendant on the arson, and he arrested Defendant on a warrant for an unrelated city violation. Etzelmiller testified that he gave Defendant his Miranda warnings while transporting him to the county jail at approximately 1:50 p.m. Etzelmiller made no attempt to question Defendant. At approximately 8:00 p.m. on the same day, agents with the Bureau of Alcohol, Tobacco and Firearms ("ATF") arrived at the jail. Having been advised by Etzelmiller that Defendant had previously been provided Miranda warnings, the agents interviewed Defendant. They informed Defendant that they had received information implicating him in the arson of City Hall. They detailed this information and played portions of the tape recordings they had obtained. The agents then suggested to Defendant what they believed happened at City Hall on the night of March 29, 1992. This scenario suggested that Defendant was the one who set the fire after breaking into City Hall with another individual during a robbery attempt and upon being disappointed at not finding any money. Defendant indicated that was how it happened.
 
 
 8
 Defendant was twenty-six years old at the time of his arrest. He had several prior encounters with law enforcement officers, leading to seven arrests and three convictions prior to that time.
 
 
 9
 Following a jury trial, Defendant was convicted as charged and sentenced to 124 months imprisonment. On appeal, Defendant claims that the district court erred by (1) failing to suppress the statements Defendant made to the ATF agents, (2) enhancing Defendant's base offense level for committing the arson to conceal another offense, U.S.S.G. 2K1.4(b)(1), and (3) adjusting Defendant's base offense level upward for acting as an organizer, leader, manager, or supervisor in the offense of conviction, U.S.S.G. 3B1.1(c).
 
 
 10
 Defendant claims that the district court erred by failing to suppress the statements Defendant made to the ATF agents. Defendant claims that Defendant's statements to the ATF agents were not admissable because there was no evidence that Defendant understood his rights or voluntarily waived them. Defendant further contends that because nearly six hours transpired between the time he was first advised of his Miranda warnings and before the ATF agents interviewed him, he should have been read his Miranda warnings again. In reviewing a denial of a defendant's motion to suppress evidence, we review the district court's findings of fact for clear error and consider the evidence in the light most favorable to the government. United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir.1990).
 
 
 11
 Before statements made by a defendant during custodial interrogation can be used at trial, the government has the burden of proving that the defendant was given adequate Miranda warnings, and that he voluntarily, knowingly, and intelligently waived his rights. Miranda v. Arizona, 384 U.S. 436, 444-45, 467-76, 479 (1966). A defendant's waiver is voluntary and knowing "if the totality of the circumstances reveal both an uncoerced choice and the requisite level of comprehension." Moran v. Burbine, 475 U.S. 412, 421 (1986). Even if the district court erred in the defendant's admissions or confession, such ruling is subject to a harmless error analysis. Arizona v. Fulminante, 111 S.Ct. 1246, 1257 (1991).
 
 
 12
 We conclude that the district court did not err in admitting Defendant's statements to the ATF agents into evidence. Defendant alleges no coercion on the part of the ATF agents, and the district court found none. Absent evidence of coercive police conduct, Defendant's waiver of his Fifth Amendment privilege and right to counsel was voluntary. See Colorado v. Spring, 479 U.S. 564, 573-74 (1987). Moreover, the evidence established that Defendant was given adequate Miranda warnings by Police Chief Etzelmiller, and there is no allegation that Defendant failed to understand them. See id. at 574-75 (evidence that warnings given coupled with no evidence of defendant's failure to understand them is sufficient basis for admission of statements). Furthermore, Defendant had considerable experience with law enforcement and his rights under Miranda. Although, as the district court noted, it may have been preferable for the ATF agents to re-Mirandize Defendant prior to their questioning of him, we conclude that the passage of time alone, given the lack of coercion and lack of evidence that Defendant failed to understand his warnings, does not warrant suppression of Defendant's statements. Finally, even if the district court did err in admitting the confession, any error was harmless in that the guilty verdict was "surely unattributable to the error," United States v. March, 999 F.2d 456, 463 (10th Cir.), cert. denied, 62 U.S.L.W. 3349 (1993), given the abundance of evidence against Defendant, including the taped conversation with Jackson in which the jury could hear, in Defendant's own words, how he had committed the crime.
 
 
 13
 Defendant also claims that the district court erred in enhancing Defendant's sentence for committing the arson to conceal another offense, U.S.S.G. 2K1.4(b)(1). The government bears the burden of proving by a preponderance of the evidence that the enhancement applies. United States v. Kirk, 894 F.2d 1162, 1164 (10th Cir.1990). We review the district court's findings for clear error. See United States v. Hernandez, 967 F.2d 456, 458 (10th Cir.1992).
 
 
 14
 We conclude that it was clearly erroneous for the district court to find that Defendant committed the arson to conceal the earlier burglary. The overwhelming weight of evidence supports the conclusion that Defendant set the fire at City Hall out of anger. The only evidence to which the government can point in support of the court's conclusion that Defendant was motivated to set the fire in order to conceal the earlier burglary is that upon entering the building, Defendant wiped his footprint off the door. Although this evidence may, in the absence of any other evidence of motive, support a finding of a general motive to conceal criminal activity, it is not enough to outweigh the abundance of evidence that Defendant set the fire purely and simply because he was angry that he found no money. Though this is a close case, we cannot conclude that the government met its burden of proving by a preponderance of the evidence that an enhancement under 2K1.4(b)(1) was appropriate.
 
 
 15
 Defendant's final claim is that the district court erred in adjusting his offense level upward for acting as an organizer, leader, manager, or supervisor in the offense of conviction, U.S.S.G. 3B1.1(c). We review for clear error. Id.
 
 
 16
 We have upheld a district court's finding that a Defendant qualified as an organizer or supervisor under U.S.S.G. 3B1.1(c) when evidence shows that the defendant "exercised any degree of direction or control over a subordinate in the criminal scheme." United States v. Morgan, 936 F.2d 1561, 1574 (10th Cir.1991), cert. denied, 112 S.Ct. 1190 (1992). The evidence at trial demonstrated that Defendant led Cox in the commission of the arson. The evidence tended to show that it was Defendant's idea to set fire to City Hall, and Defendant determined the manner in which the fire would be set. During the trial, Jackson testified that Defendant told him that after being unsuccessful in opening the safe, Defendant said to Cox, "So, well, we'll just [expletive] burn the building down." From this evidence, we cannot conclude that the district court's finding that Defendant exercised some direction or control over Cox was clearly erroneous.
 
 
 17
 Defendant's conviction and sentence adjustment for acting as an organizer, leader, manager, or supervisor is AFFIRMED. Defendant's sentence enhancement for committing the arson to conceal another offense is REVERSED, and the case is REMANDED for resentencing consistent with this opinion.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3