644

# UNITED STATES

v.

**Airman First Class Cory S. MOORE,
FR461–71–7952, United States
Air Force.**

## ACM 29940.

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 Jan. 1992.

Decided 23 Nov. 1993.

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Major Mary C. Yastishock, and Captain Gilbert J. Andia, Jr.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, and Captain Jules D. Silberberg.

Before JOHNSON, HEIMBURG, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Contrary to appellant's plea, a military judge convicted him of committing an indecent act upon a female child. Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced appellant to a bad-conduct discharge, confinement for 7 months, forfeiture of $300 pay per month for 5 months, and reduction to E–1. We find it necessary to discuss only one of the two errors assigned, as it is dispositive. We find appellant's confession was inadmissible and set aside his conviction.

At trial, the defense counsel moved to suppress the oral statements appellant made to special agents of the Air Force Office of Special Investigations (AFOSI) concerning the charged offense. After making extensive findings of fact, the military judge denied the motion. The military judge concluded that appellant was fully advised of his rights; that he waived these rights freely, voluntarily, and intelligently; and that he never invoked his right to counsel until asked to prepare a written statement. Appellant asserts that the military judge erred, that he did invoke his right to counsel, that the statements should have been suppressed, and that the failure to suppress was prejudicial error in light of the questionable testimony of the victim.

### I. Facts

At the request of AFOSI Special Agent Jolly, appellant went to the AFOSI office to be interviewed. Agent Jolly identified himself as an AFOSI agent and advised appellant he was investigating allegations appellant had committed indecent acts or liberties with a child and attempted rape and carnal knowledge. Agent Jolly then orally warned appellant of his rights to silence and legal counsel by reading from an Air Force Visual Aid 125–19, "Advisement of Rights (for military personnel)." At the

end of the advisement, Agent Jolly asked appellant if he understood his rights. Appellant said he did. When asked if he wanted a lawyer, appellant said he wasn't sure and asked Agent Jolly if he should get one. Agent Jolly told appellant it was his choice and then reread the part of the advisement pertaining to the right to counsel. Appellant acknowledged understanding his rights, declined counsel, and agreed to talk with Agent Jolly and his partner, Agent Outlaw.

Appellant admitted that SH, a 12–year–old girl, was at his house babysitting an infant while he was looking after his stepson and another young child. During that evening, he said, the conversation between appellant and SH had turned to sex[1] and he asked SH what she would do if he asked to kiss her. Agent Jolly asked appellant how SH responded to that question. Appellant said she acted a little scared. At that time, appellant put his head down and stated that he liked his career in the Air Force, that this could threaten that career, and that he didn't know whether it was better to walk down the street and talk to a lawyer. Agent Jolly told appellant that the choice was his to make. Appellant looked away for between 5 and 10 seconds and then refocused his eyes on Agent Jolly. Agent Jolly again asked appellant how SH responded to appellant's question. Appellant did not answer that question. Over the next 10–15 minutes, Agent Jolly continued to question appellant, but without getting any direct, meaningful answers from him.

Agent Outlaw, concerned that they weren't making any progress in the interrogation, explained to appellant that he had been charged with just fondling SH, not raping her, that this was his opportunity to tell his side of the story, and that Agent Outlaw and Agent Jolly would allow him to sit by himself and contemplate what he wanted to do. Agent Jolly asked appellant if he wanted to use the latrine or have a soda. Appellant said he wanted a soda. Agent Jolly went to get the soda and Agent Outlaw went to see the AFOSI detachment commander. When Agent Jolly returned with the soda 20–30 seconds later, appellant told him he was ready to talk. Appellant then admitted that he had sat on the couch next to SH, kissed her on the mouth twice, touched her belly and breasts, and kissed her nipples. He was unsure whether he lifted up her shirt before he touched and kissed her breasts.

Agent Jolly asked appellant if he would be willing to provide a written statement. Appellant agreed and began to read and initial the advisement of rights contained on an Air Force Form 1168, "Statement of Suspect." When he got to the part about waiving his right to an attorney, appellant stepped back from the table and said that he had always been advised not to make a written statement before talking to a lawyer. Agent Jolly told him it was his choice. Appellant then asked for a lawyer. Agent Outlaw's efforts to get the area defense counsel on the phone were unsuccessful, so the AFOSI agents released appellant. The interview lasted approximately 90 minutes.

The military judge found appellant's comment about whether he should walk down the street and talk to a lawyer was appellant's "verbalized state of mind. That is, he was wondering whether to talk or to go see a lawyer." The military judge also found that Agent Jolly did not view this as an invocation of counsel rights, and that "it was appropriate to then resume questioning since the right to counsel was not invoked in a reasonable time."

## II. The Law

■ Before interrogating a military suspect, persons required to give warnings under Article 31, UCMJ, 10 U.S.C. § 831, must inform the suspect of the nature of the accusation and advise the suspect of his right to remain silent, that any statement he makes may be used against him in a

---

1. SH testified that appellant had asked her about a previous babysitting experience in which $40 had disappeared from the house where she was working. SH told appellant that she had invited some friends, both boys and girls, to join her. SH dared Julie, one of her friends, to take the $40. When Julie refused, Angie, another friend, told Julie to do it or she would have to perform fellatio on one of the boys present.

trial by court-martial, and that he has a right to consult with counsel and have counsel present at the interrogation. Mil. R.Evid. 305(c) and (d). Any statement obtained in violation of the right to counsel is involuntary. Mil.R.Evid. 305(a). Except for a few limited purposes, an accused's involuntary statements may not be received in evidence. Mil.R.Evid. 304(a). To do so violates due process of law. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Norfleet,* 36 M.J. 129 (C.M.A.1992).

When a suspect invokes his right to counsel during a custodial interrogation, the questioners must suspend the interrogation until counsel is present or the suspect initiates further conversation. *Minnick v. Mississippi,* 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990); *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). But, "[n]ot every vague reference to counsel requires termination of the interrogation." *United States v. Davis,* 36 M.J. 337, 341 (C.M.A.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 379, 126 L.Ed.2d 329 (U.S.1993). When the suspect makes an equivocal reference to counsel, the interrogation must be halted or its scope must immediately be narrowed to clarifying the request. *United States v. McLaren,* 38 M.J. 112 (C.M.A.1993); *Davis,* 36 M.J. at 341, *citing United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1472 (11th Cir. 1992); *United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *United States v. Cherry,* 733 F.2d 1124, 1130 (5th Cir.1984). In clarifying the equivocal reference to counsel, "[t]he interrogator may not attempt to persuade the suspect that counsel is not necessary or desirable, or presume to tell the suspect what counsel's advice is likely to be." *Davis,* 36 M.J. at 337–38, *citing Cherry,* 733 F.2d at 1130.

If the interrogators fail to clarify the equivocal response, "the situation [is] the same as if [the suspect] had unequivocally requested a lawyer." *McLaren,* 38 M.J. at 115. In that case the suspect's "responses to further questioning about the offenses [are] admissible only if 'he (a) initiated further discussion with the police, and (b) knowingly and intelligently waived the right he had invoked.'" *Id., citing Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984). If the right to counsel is not declined affirmatively, the prosecution must demonstrate by a preponderance of the evidence that the individual waived the right to counsel. Mil. R.Evid. 305(g)(2).

### III. Standards of Review

The Supreme Court has established two standards for appellate courts to apply when reviewing the voluntariness of a confession. If the inquiry concerns the mental condition of the accused as it impacts on his ability to freely, knowingly, and intelligently waive his rights, then admissibility is a matter governed by the rules of evidence, and appellate courts apply an abuse of discretion standard. *See Connelly,* 479 U.S. at 167, 107 S.Ct. at 521–22, 93 L.Ed.2d at 484. On the other hand, if the inquiry concerns coercive police activity, appellate courts must review the admissibility of the confession de novo. *Arizona v. Fulminante,* 499 U.S. 279, 286–87, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302, 315 (1991); *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *United States v. Collier,* 36 M.J. 501 (A.F.C.M.R. 1992); *but see McLaren,* 38 M.J. at 115 (Court of Military Appeals held military judge did not abuse discretion by admitting confession. Accused said "I think I want a lawyer"; agents said, "It's your choice"; and accused then answered the previous question without any inducement from agents.)

Appellant contends he asserted his right to counsel and confessed to the offense only after the AFOSI agents refused to honor his request for counsel. Therefore, we must apply a de novo, plenary review. We may adopt the military judge's findings of facts when we find they are supported by the record, or we may find the facts ourselves. Article 66(c), UCMJ, 10 U.S.C. § 866; *United States v. Cole,* 31

M.J. 270 (C.M.A.1990); *Collier*, 36 M.J. at 504. Once the facts are established, we must examine the totality of the circumstances to determine whether the confession was voluntary. *Fulminante*, 499 U.S. at 284–85, 111 S.Ct. at 1251; *Collier*, 36 M.J. at 504.

## IV. Discussion

When first asked if he wanted an attorney, appellant gave an equivocal response: "I'm not sure, should I get one?" The AFOSI agents properly narrowed the scope of their inquiry to resolving the equivocal response by telling appellant it was his choice and rereading the part of the Article 31/*Miranda* warnings concerning rights to counsel. Appellant affirmatively waived his right to counsel by stating that he did not want counsel. Later, appellant bowed his head and made another equivocal invocation of the right to counsel—"I don't know whether I should walk down the street to talk to a lawyer." At that time, the AFOSI agents should have limited their interrogation to resolving the ambiguous reference to counsel. They failed to do so. Agent Jolly told appellant it was his choice, but never obtained from appellant any affirmative waiver of his right to counsel. Instead, approximately 10 seconds later, when appellant refocused on Agent Jolly, Agent Jolly reinitiated the interrogation by repeating the substantive question which had caused appellant to raise the counsel issue. For the next 10–15 minutes, appellant "just wasn't direct in anything that he was saying" to Agent Jolly. His answers were "evasive."

The military judge's findings that Agent Jolly did not view appellant's musings as a request for counsel and that the appellant failed to invoke his right to counsel in a reasonable time are misapplications of the law. The focus of a voluntariness inquiry is not the interrogator's subjective views of whether the suspect invoked his rights. Instead, the focus is on the conduct of the suspect. In evaluating the suspect's conduct, courts have considered his personal background and experience, as well as the conduct of the police, as they bear upon the suspect's ability to knowingly, intelligently, and voluntarily relinquish or abandon these rights. *See Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Edwards*, 451 U.S. at 482, 101 S.Ct. at 1884, *citing Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Appellant has no time limit in which he must exercise his rights to counsel or lose them. Until his equivocal invocation is clarified and an affirmative waiver of his right to counsel is obtained, he may not be further interrogated about criminal offenses. *Davis*, 36 M.J. at 341. Waiver can not be presumed from appellant's failure to respond to Agent Jolly's suggestion that it was appellant's choice whether or not to seek counsel or from the fact that a confession was eventually obtained. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). We are unwilling to conclude that appellant's refocusing his eyes on Agent Jolly was sufficient to indicate his willingness to continue with the interview, especially in light of his failure to cooperate during the next 10–15 minutes of questioning. Appellant did not begin answering questions again until after Agent Outlaw suggested that this was appellant's opportunity to tell his side of the story. Under these circumstances, we view this suggestion as the type of attempt to persuade appellant to forgo counsel condemned by the Court of Military Appeals. *Davis*, 36 M.J. at 337–38. We find that, considering the totality of the circumstances, the prosecution failed to establish, by a preponderance of the evidence, that appellant waived his right to counsel. Accordingly, it was error for the military judge to admit any of appellant's statements made after appellant suggested that he might walk down the street and talk to a lawyer.

Finding error in the admission of the statements, we must decide if the error was harmless beyond a reasonable doubt. *Fulminante*, 499 U.S. at 294–96, 111 S.Ct. at 1257. To hold such error harmless, we must be convinced the admission of appel-

lant's confession did not contribute to his conviction. *Id., citing Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967). SH, the victim, was the sole witness to the offense. She waited almost 6 weeks before reporting the incident. Her credibility was hotly contested; two witnesses claimed SH was not a truthful person, while several others said she was. No physical evidence was adduced at trial to corroborate SH's complaint. SH admitted first introducing sexual matters into her conversation with appellant. Under these circumstances, we are unable to conclude that appellant's confession did not contribute to his conviction.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Senior Judge JOHNSON (who participated in the decision before his reassignment from the Court) and Senior Judge HEIMBURG concur.