F I L E D
United States Court of Appeals
Tenth Circuit

APR 23 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

CHRISTOPHER LEE RAMBO,

  Defendant - Appellee.

No. 03-1242

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 03-CR-14-N)

---

Lynn Hartfield, Assistant Federal Public Defender (Michael G. Katz, former Federal Public Defender; Raymond P. Moore, present Federal Public Defender; and Scott Varholak, Assistant Federal Public Defender, on the briefs), Denver, Colorado, for Defendant-Appellant.

James C. Murphy, Assistant U. S. Attorney (John W. Suthers, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Defendant Christopher Lee Rambo was taken into custody because the police received information that he was involved with two armed robberies in Greeley, Colorado. Greeley Police Officer Michael Moran interviewed Rambo and Rambo eventually confessed to his role in the robberies. Rambo was charged with two counts of robbery affecting commerce in violation of 18 U.S.C. § 1951(a), two counts of using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), and one count for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Rambo moved to suppress his confession on the grounds that it had been obtained in violation of his Fifth Amendment right against self-incrimination. The district court denied the motion. Rambo pleaded guilty to the two 18 U.S.C. § 924(c) charges, but under his plea agreement with the government he retained his right to appeal the district court's decision concerning his motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). This court has jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude the police failed to honor Rambo's request to terminate the interrogation, we **reverse** and **remand**.

## II.    BACKGROUND

Rambo was taken into custody in connection with two armed robberies. Officer Moran was investigating the robberies and he interviewed Rambo's

2

suspected accomplice, Stacey Hinshaw.  After his interview with Hinshaw, Moran conducted a videotaped interview with Rambo.  On the videotape, Rambo can be seen seated in an interrogation room with his wrists and legs loosely bound, allowing him some freedom of movement.  Moran is seated facing Rambo.  The following reflects the exchange between Rambo and Moran.[1]

**Moran**: Responsibility is going to get spread around the table here, ok.

**Rambo**: [unintelligible]

**Moran**:  Not one hundred percent of it is falling down on your shoulders.  But a lot of it's gonna be. You know where the responsibility lies.  Y'know, we've been through this before, y'know.  Like I just told Stacey, y'know, I don't want to put more on her shoulders than actually, y'know, needs to be there, y'know.  I'm not gonna hit her with stuff that she's not responsible for doing.  But I am going to charge her for the stuff that she is responsible for.

**Rambo**: What's she getting charged for?

**Moran**: She's getting charged with two aggravated, er, yeah, two aggravated robberies.

---

[1] The transcription set out here begins with a short exchange which cannot be heard on two of the copies of the tape submitted on appeal, but can be heard on the videotape which appears to have been submitted to the district court.

**Rambo**: Is she gonna get released, or is she staying in jail?

**Moran**: I don't know. [pause] You know if you want to talk to me about this stuff, that's fine.

**Rambo**: I was trying to get a feel for what's going on with her and her kids and stuff. [unintelligible]

**Moran**: There's a lotta stuff that's gonna go down with her in the next couple of days. I don't know exactly what's going to happen with her and her kids.

**Rambo**: She gonna get released tonight?

**Moran**: I doubt it. [pause] Do you want to talk to me about this stuff?

**Rambo**: No. [silence]

**Moran**: You don't? [pause] OK. [long pause] That's fine. [pause] But that's what you're getting charged with.

**Rambo**: Alright.

**Moran**: OK?

**Rambo**: Alright.

**Moran**: And there's gonna be some other agencies that are gonna (unintelligible) . . . too. Some stuff —

**Rambo**: And I'm gonna stay here?

**Moran**: You know that. You don't need me to tell you that.

4

**Rambo**:  There's a lotta shit that I don't know . . . . There's a lotta shit that I wasn't involved with —

**Moran**:  If you think back over the last two months since you've been out of prison, all the shit you've been involved in.  Think about this. Think about the towns that are going to want to talk to you ok? Or that have stuff on you.

**Rambo**:  Like the Suburban, for instance.  I didn't know it was stolen.  I thought it was Stacey's car, you know.  She had the keys and everything.

**Moran**:  We can talk about it if you want to talk about it.

**Rambo**:  I didn't know whether I was —

**Moran**:  Did these guys (gesturing backwards) advise you of your Miranda?

**Rambo**: Yes.

**Moran**:  The warning?

**Rambo**:  Yes.  I refused to sign anything.  (unintelligible) trippin' on.  We were just talking about other stuff.  All that stuff that went down, I don't know, some of the stuff that I know that was going on, you know . . . you know coupon stuff, pawn stuff.  I didn't pawn anything, you know . . . that's my girlfriend, so I went with her.

**Moran**: Before we get into this stuff, Chris, I gotta know if you want to talk to me, you know what I'm saying? I can't sit here and talk with you like this if you don't want to talk to me. So do you want to talk to me?

**Rambo**: That's what I understand . . .

Moran then informed Rambo of his *Miranda* rights and Rambo eventually confessed that he had been an active participant in the two robberies.

After viewing the videotape and hearing argument from counsel, the district court concluded that Rambo's statement was admissible because Rambo was not under interrogation prior to receiving the *Miranda* warnings from Moran.[2]

## III. DISCUSSION

In reviewing the district court's denial of a motion to suppress, we consider the evidence in a light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. *United States v. Glover*, 104 F.3d 1570, 1576 (10th Cir. 1997). We review conclusions of law *de novo*. *Id*.

Rambo claims that his confession should have been suppressed because it

---

[2] We admonish defense counsel for failure to adhere to 10th Cir. R. 28.2(A)(2) which requires that he attach to appellant's brief a copy of the transcript pages containing the district court's order denying appellant's suppression motion.

was obtained in violation of the procedural protections set down by the Supreme Court in *Miranda* and its progeny. For the protections of *Miranda* to apply, custodial interrogation must be imminent or presently occurring. *United States v. Bautista,* 145 F.3d 1140, 1147 & n.3 (10th Cir. 1998). The government argues that the district court was correct to conclude that Rambo was not under interrogation prior to Officer Moran's recitation of the *Miranda* warnings. We disagree.

While the district court concluded that the lack of questions indicated there was no interrogation by Moran, the use of questions is not required to show that interrogation occurred. In *Rhode Island v. Innis*, the Supreme Court held that interrogation encompasses not only questioning but "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301 (1980) (footnote omitted). The test of whether an interrogation has occurred is an objective one. *United States v. Gay*, 774 F.2d 368, 379 n.22 (10th Cir. 1985). The focus is on the perceptions of a reasonable person in the suspect's position rather than the intent of the investigating officer. *Innis*, 446 U.S. at 301.

The portion of the interview available on videotape opens with Moran informing Rambo that much of the blame will fall on Rambo's shoulders. As the

7

Supreme Court has recognized, one of the techniques used by police during interrogation is to "posit the guilt of the subject." *Innis*, 446 U.S. at 299 (quotations omitted). The Court concluded it was "clear that these techniques of persuasion, no less than express questioning, were thought, in a custodial setting, to amount to interrogation." *Id.* Thus, Moran's first comments are an example of interrogation explicitly recognized by the Supreme Court. Moreover, other questions and comments recorded on the videotape support the conclusion that Rambo was under interrogation.

Given the context, Moran's comment "if you want to talk to me about this stuff, that's fine," is fairly understood as an attempt to refocus the discussion on the robberies. Moran reiterates this invitation four times during the course of the interview. These repeated attempts to discuss the crime under investigation were reasonably likely to produce an incriminating response.

While the government claims that Moran's only goal was to obtain a waiver of the right to remain silent, that assertion ignores the appropriate test for determining if an interrogation occurred.[3] It is true that an investigating officer's

---

[3] The government also argues that the district court found that "[Moran] on the tape is obviously trying to avoid a situation where the defendant talks or says things without being Mirandized." The government's reliance on this finding, however, is misplaced. As noted above, Moran's intent is not controlling. If anything, Moran's concern about un-Mirandized statements would seem to indicate an awareness that his interview with Rambo was likely to produce incriminating information.

intention may be relevant, but it is the objectively measured tendency of an action to elicit an incriminating response which is ultimately determinative. *Innis*, 443 U.S. at 301 & n.7. As we have described above, Moran's interaction with Rambo was reasonably likely to produce incriminating information and, therefore, Rambo was under interrogation.

Because Rambo was under custodial interrogation, the procedural protections of *Miranda* apply. The government argues, however, that Moran was not required to cut off the interrogation because Rambo failed to unequivocally invoke his right to remain silent.

In the relevant exchange, Moran asked Rambo, "[D]o you want to talk to me about this stuff?" Given Moran's earlier comments, it is clear that he is referring to the robberies. In response to Moran's question, Rambo says, "No." In order to determine if a suspect invoked the right to remain silent, we examine the entire context of the relevant statement for a clear and unambiguous assertion of the right to remain silent. *See United States v. Johnson,* 56 F.3d 947, 955 (8th Cir. 1995). Under the circumstances of this case, Rambo's refusal to discuss the robberies was a clear and unambiguous invocation of his right to remain silent.

The government asserts that Rambo's statement was ambiguous in the context of the ongoing discussion because Rambo failed to state that he did not want to speak with any officer and never requested an attorney. That Rambo did

9

not request an attorney is certainly irrelevant to the question of whether he invoked his right to remain silent. Although the context and nuances of a request to end questioning can create ambiguity, they cannot overcome a clear expression of the desire to remain silent. *See United States v. March*, 999 F.2d 456, 460 (10th Cir. 1993) (stating that interpretation of whether the defendant invoked his right to counsel is "only required where the defendant's words, understood as ordinary people would understand them, are ambiguous." (quotation omitted)). In this case, Moran asked Rambo if he wanted to discuss the "stuff," i.e. the robberies, and Rambo said "No." There is no nuance nor context to vary the unequivocal meaning of Rambo's single word, monosyllabic response. His response, "No," could only mean an invocation of his right to remain silent.

If Rambo invoked his right to remain silent and Moran failed to "scrupulously honor[]" that right, Rambo's confession must be suppressed.[4] *Michigan v. Mosley*, 423 U.S. 96, 103 (1975) (quotation omitted). In *United*

_____

[4] The Government asserts that Rambo failed to argue below that his right to remain silent was not scrupulously honored and that the district court failed to make the relevant findings of fact. Both assertions are incorrect. As Rambo notes, his counsel did argue that Moran violated Rambo's constitutional rights by continuing the interrogation after Rambo had refused to discuss the robberies. Likewise, the district court noted that Rambo had invoked his right to silence. In ruling on the motion to suppress the district court stated, "I know of no case that holds that once a suspect says that he doesn't want to talk, the investigator is required to walk away and zip his lip." The court's comment concerning a suspect invoking the right to remain silent can, given the context, only refer to Rambo's refusal to discuss the robberies. Indeed, government counsel below likewise referred to Rambo's "no" as the relevant word.

10

*States v. Glover*, we discussed the factors articulated in *Mosley* to determine whether the police may reinitiate interrogation after the right to remain silent has been invoked:

> [O]fficers can reinitiate questioning only if: (1) at the time the defendant invoked his right to remain silent, the questioning ceased; (2) a substantial interval passed before the second interrogation; (3) the defendant was given a fresh set of *Miranda* warnings; (4) the subject of the second interrogation was unrelated to the first.

104 F.3d at 1580.[5] In *Mosley*, the Supreme Court noted that the "critical safeguard" associated with the right to remain silent in *Miranda* was the "right to cut off questioning." 423 U.S. at 103 (quotation omitted).

The government contends that it was Rambo who reinitiated communication after invoking his right to remain silent and, therefore, Moran was not required to terminate the interview. That argument ignores Moran's active role in continuing the interview after Rambo invoked his rights. When Rambo stated that he did not want to discuss the robberies, Moran made no move to end the encounter. Instead he acknowledged Rambo's request, but told Rambo that he would be charged with two aggravated robberies and that other agencies would want to speak with Rambo. Those comments reflect both further pressure on Rambo to discuss the

---

[5] We recognize that other courts of appeals have concluded that there is no definite time police must forego questioning and that police may return to the original subject of interrogation. *See, e.g., United States v. Hsu*, 852 F.2d 407, 410-11 (4th Cir. 1998). We decline to take up these questions because we conclude that the most essential requirement, the cessation of interrogation, did not occur in this case.

crimes and a suggestion that despite Rambo's present request to terminate discussion of the topic, he would be questioned further.

Whatever else *Mosley* might require, it is clear that some break in the interrogation must occur. *See Mosley*, 423 U.S. at 102 (concluding that once the right to silence has been invoked allowing the resumption of an interrogation after only a momentary break would "lead to absurd and unintended results"). Thus, we conclude that Moran failed to scrupulously honor Rambo's right to remain silent and, therefore, Rambo's confession must be suppressed.

## IV. CONCLUSION

For the foregoing reasons, this court **reverses** the denial of the motion to suppress, and **remands** so that the district court may vacate the plea agreement upon proper motion.