**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM ROBERT DONACHY,

Defendant-Appellant.

No. 04-5060

(N.D. Oklahoma)

(D.C. No.  CR-00-106-H )

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HENRY**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to decide this case on the briefs without oral argument. *See* FED. R. APP. P. 34(f) and 10TH CIR. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

Mr. Donachy appeals the district court's denial of his motion to suppress evidence based on a violation of his Fifth Amendment right to receive *Miranda* warnings. The district court found that the police officers did not need to administer *Miranda* warnings during questioning and the search of a residence, under the public-safety exception to *Miranda*.

## I. FACTUAL BACKGROUND

On January 3, 2000, Officer Ellen Anderson (then Officer Ellen Oyster) investigated a reported disturbance at 6532 East 58th Street in Tulsa, Oklahoma, located in what she testified is an upper-middle-class residential neighborhood. The dispatcher advised that the woman who reported the disturbance claimed to have been locked out of her house by her adult son. The woman, Sarah Donachy, informed the dispatcher that she suspected her son had been sniffing paint and might be armed. The dispatcher warned Officer Anderson that a William Donachy from that location had previously threatened to kill police officers and the President of the United States.

Upon arriving at the residence, Officer Anderson spoke to Ms. Donachy, who repeated the information she had told the dispatcher, and further informed the officer that her son had two shotguns, one of which was hidden under the bed. A neighbor also reported that he had been outside talking to Ms. Donachy when the defendant came outside and stated that he felt like he should "get his shotgun

and start blasting away" and that he "might as well kill them," referring to his mother and the neighbor. Rec. vol. III, at 10.

Upon receiving this information, Officer Anderson called for backup. After contacting Mr. Donachy, he stepped outside, where the officers handcuffed him behind his back and arrested him on four outstanding misdemeanor warrants. After handcuffing and arresting Mr. Donachy, the officers thoroughly searched the residence and found one rifle in the house. Suspecting a second gun to be somewhere outside of the residence, Officer Anderson asked Mr. Donachy where the remaining gun was, without giving Mr. Donachy any advisement pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). According to her testimony, Mr. Donachy mumbled and rambled in an attempt to avoid the question. Officer Anderson explained to Mr. Donachy that any gun outside of the house could pose a threat to children in the neighborhood. After repeating the question three or four times, Mr. Donachy answered that the gun was in the trunk of his mother's car.

## II. DISCUSSION

The sole issue on appeal concerns the denial of the motion to suppress the firearm. Mr. Donachy argues that Officer Anderson violated his Fifth Amendment rights. "In reviewing the district court's denial of a motion to suppress, we consider the evidence in a light most favorable to the government

and accept the district court's factual findings unless they are clearly erroneous." *United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004). "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). We review de novo conclusions of law. *Rambo*, 365 F.3d at 909.

Mr. Donachy argues that, because he was in custody at the time he was questioned, and because Officer Anderson's inquiry was based on pure speculation that there might be a "firearm somewhere in the neighborhood," Aplt's Br. at 8, a *Miranda* warning was required, and the failure to give it requires suppression of his statement as to the existence and location of the gun. The district court denied his motion to suppress, finding that, despite the fact that Mr. Donachy was in custody, a *Miranda* warning was unnecessary because Officer Anderson's question was prompted by a concern for public safety under *New York v. Quarles*, 467 U.S. 649 (1984). We agree.

"Whether facts support an exception to the *Miranda* requirement is a question of law." *United States v. Lackey*, 334 F.3d 1224, 1226 (10th Cir.), *cert. denied,* 124 S. Ct. 502 (2003). In *Quarles*, the Supreme Court held that "the need for answers to questions in a situation posing a threat to the public safety

-4-

outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." 467 U.S. at 657. The Court crafted a "narrow exception" so that in certain situations an officer may–without violating the suspect's constitutional rights– question a suspect in custody before giving a Miranda warning if it relates "to an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *Id.* at 658, 659 n.8. The purpose of the exception is to "free [police officers] to follow their legitimate instincts when confronting situations presenting a danger to the public safety." *Id.* at 659; *cf. United States v. Fleming*, 917 F.2d 850, 854 (5th Cir. 1990) (*Quarles* public-safety exception did not apply because officer did not have knowledge that plaintiff possessed a firearm).

The government relies on *United States v. Tisdale*, 70 F. Supp. 2d 1210, 1217 (D. Kan. 1999), where the district court applied the public-safety exception where the defendant was not in custody and was not in a "particularly coercive environment." When the defendant responded to the officer's questions, he was lying on the front yard, after having been shot and wounded by an unknown person. The officers surmised, based on the number of shell casings near the wounded man, that another firearm may have been involved. The officers questioned Mr. Tisdale several times, who finally admitted to having a gun in his pocket. The district court stated that because "the officers reasonably believed a

gun was somewhere in the vicinity in a residential neighborhood, the police had an objectively reasonable concern for public safety and could question the defendant about the gun without first giving him *Miranda* warnings." *Id.*

Here, the evidence in support of applying the narrow public-safety exception appears even stronger than that in *Tisdale*. Mr. Donachy's mother reported that her son had two firearms, and one was found under her son's bed, as she suspected. A neighbor testified that, earlier in the day, he witnessed Mr. Donachy mention that he should "get his shotgun and start blasting away" and that he "might as well kill them," meaning the neighbor and Ms. Donachy. Rec. vol. III, at 10. The officers knew the situation was volatile. Mr. Donachy had previously threatened to kill police officers and the President of the United States. Officer Anderson testified that she concluded the remaining gun constituted an ongoing threat: there were "children in the neighborhood that play in the streets, that play in the yards." Rec. vol. III, at 13-14. In addition, she testified she had "see[n] all kinds of pedestrian traffic, children riding bicycles, playing in the neighborhood, people walking dogs. [She] didn't want that weapon to fall into the wrong hands and somebody get hurt or injured." *Id.* at 14*; see Allen v. Roe,* 305 F.3d 1046, 1051 (9th Cir. 2002) ("If the gun was discarded in a public place, it posed a continuing immediate danger because anyone could have found the gun at any time . . . . and the danger posed by the gun does not dissipate over time.").

Finally, even though the officer's subjective motivation does not affect whether the public-safety exception applies, no evidence suggests that the officers' questions were designed solely to elicit testimonial evidence from Mr. Donachy. Viewing the evidence in the light most favorable to the government, we hold that the question about weapons was justified under the *Quarles* public-safety exception to the *Miranda* rule.[1]

### III. CONCLUSION

We therefore AFFIRM Mr. Donachy's conviction.

Entered for the Court,

Robert H. Henry
Circuit Judge

---

[1]     Because we hold that Mr. Donachy's statement is admissible under the public-safety exception to *Miranda*, we need not address the question of whether non-testimonial physical evidence, discovered as the result of a statement obtained in violation of *Miranda*, is subject to exclusion under *Wong Sun v. United States*, 371 U.S. 471, 488 (1963), as fruit of the poisonous tree. On appeal, neither party raises this question. We note, however, that in a plurality decision the Supreme Court has recently held that failure to advise a defendant of his *Miranda* rights does not require suppression of the physical fruits of the defendant's unwarned, but voluntary, statements. *United States v. Patane,* 124 S. Ct. 2620, 2626 (2004).