FILED
United States Court of Appeals
Tenth Circuit

June 16, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

MICHAEL ANTHONY McCARTHY,

      Defendant–Appellant.

No. 09-2259
(D.C. No. 2:08-CR-02665-RB-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

Michael Anthony McCarthy appeals the district court's denial of his motions to suppress statements that he made during a police interrogation. Because law enforcement officers continued to question McCarthy after he unequivocally invoked his right to remain silent, we conclude that the statements must be suppressed. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

**I**

In the early morning hours of August 15, 2008, McCarthy stopped his semitrailer at a New Mexico Motor Transportation Department inspection station. Officers inspecting the cargo inside found nearly 300 kilograms of marijuana. McCarthy was taken into custody and handcuffed to a bench inside the station. Sergeant Robert Barrera, the investigating officer, then read McCarthy his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

Approximately two hours later, Border Operations Task Force Agents William Chadborn and Corey Watkins arrived at the scene. Barrera informed both agents that McCarthy had been read his Miranda rights. Watkins and Chadborn awoke a sleeping McCarthy, led him into an office, and began questioning him. During the interview, which was recorded, the following exchange took place:

> AGENT CHADBORN: Alright . . . uh . . . Just wanted to let you know that . . . uh . . . Did you invoke your rights, or did you tell them that you didn't want to talk to anybody or that you wanted an attorney present or anything like that?

> MR. McCARTHY: Unintelligible.

> AGENT CHADBORN: Okay. I, I, I can't . . . I'm having a hard time understanding you.

> MR. McCARTHY: I said, I don't want any . . . I don't want nothing to say to anyone.

> AGENT CHADBORN: You don't have anything to say to anybody?

MR. McCARTHY: No.

AGENT CHADBORN: Okay. Did, did . . . when they read you your rights . . .

MR. McCARTHY: What rights?

AGENT CHADBORN: Did, did they read you your <u>Miranda</u> warnings?

MR. McCARTHY: What rights do I have?

AGENT CHADBORN: Okay. We'll get through that right now.

Chadborn began to re-read McCarthy his <u>Miranda</u> rights, but was interrupted. Watkins, Chadborn, and McCarthy then discussed possible consequences of cooperating and refusing to cooperate with the investigation. When McCarthy attempted to speak about the details of his case, the agents repeatedly told him they could not discuss these matters unless McCarthy signed a form waiving his <u>Miranda</u> rights. Around six a.m., McCarthy signed this form and proceeded to make incriminating statements.[1] He was then transported to a Drug Enforcement Agency office for further processing.

A grand jury indicted McCarthy on one count of possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and one count of conspiracy to possess with intent to distribute 100 kilograms

---

[1] The facts as described by the dissent would have it appear as if an insignificant amount of time passed between Chadborn's initial attempt to re-read McCarthy his <u>Miranda</u> rights and McCarthy's signing of the waiver form. In fact over thirty minutes passed, during which time McCarthy asked the agents at least twice to be put in jail. It is also worth noting that both Chadborn and Watkins already knew that McCarthy had been Mirandized before they began questioning him.

3

or more of marijuana in violation of 21 U.S.C. §§ 841 and 846. McCarthy filed three motions to suppress his statements to law enforcement, arguing that Chadborn and Watkins violated his <u>Miranda</u> rights.[2] The district court denied these motions. Although it found that "ordinary people and reasonable law enforcement officials would understand a clear articulation of the phrase 'I don't want nothing to say to anyone' as an invocation of the right to remain silent," the court held that McCarthy's articulation of this phrase was not clear and his subsequent response, "No," to the question, "You don't have anything to say to anybody?" was "somewhat ambiguous." As a result, it concluded that McCarthy did not clearly and unambiguously invoke his right to remain silent and his post-waiver inculpatory statements were therefore admissible.

After his motions were denied, McCarthy entered into a plea agreement reserving the right to appeal the suppression ruling. The court accepted the plea and sentenced McCarthy to twenty-four months' imprisonment. McCarthy timely appealed.

**II**

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. <u>See</u> <u>United States v. Glover</u>, 104 F.3d 1570, 1576 (10th Cir. 1997). We review legal questions, including the issue of whether a defendant unambiguously asserted his right to remain silent, de novo. <u>Cf.</u> <u>United States v. March</u>,

---

[2] These motions were virtually identical in content.

4

999 F.2d 456, 459 (10th Cir. 1993).

Under <u>Miranda</u>, an interrogation must immediately cease when an "individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." 384 U.S. at 473-74.[3] Statements elicited by police after a defendant invokes this right are inadmissible. See <u>Michigan v. Mosley</u>, 423 U.S. 96, 103-04 (1975). To come within the ambit of this rule, however, a suspect's invocation of his right to remain silent must be "clear and unambiguous." <u>United States v. Rambo</u>, 365 F.3d 906, 910 (10th Cir. 2004).[4]

In <u>Rambo</u>, we held that a defendant's response of "No," to the question, "Do you want to talk to me about this stuff?" constituted a clear and unambiguous invocation of his right to remain silent. 365 F.3d at 910. We reasoned that "[t]here is no nuance nor context to vary the unequivocal meaning of [the defendant's] single word, monosyllabic response. His response, 'No,' could only mean an invocation of his right to remain

---

[3] The government appears to argue that McCarthy was not under interrogation when he made his initial statements. Even if this were true, the protections of <u>Miranda</u> continue to apply because custodial interrogation was undoubtedly imminent. See <u>Rambo</u>, 365 F.3d at 909 ("For the protections of <u>Miranda</u> to apply, custodial interrogation must be imminent or presently occurring." (citation omitted)).

[4] The Supreme Court recently reaffirmed this standard in <u>Berghuis v. Thompkins</u>, 560 U.S. ____, 2010 WL 2160784 (June 1, 2010). <u>Thompkins</u> held that silence does not invoke the right to remain silent; instead, a suspect must "unambiguously" invoke his <u>Miranda</u> rights. 2010 WL 2160784 at *8. The Court noted that Thompkins "would have voiced his right to cut off questioning" had he said "that he wanted to remain silent or that he did not want to talk to the police." <u>Id.</u> at *9 (quotation omitted). Because <u>Thompkins</u> merely revivifies our existing precedent, it does not affect our reasoning in this case.

silent." Id.

The same is true here. McCarthy told Chadborn that he did not "want nothing to say to anyone." Chadborn then clarified, "You don't have anything to say to anybody?" McCarthy responded, "No." Like the court in Rambo, we discern no nuance or ambiguity in this exchange. In short, no means no. If McCarthy had not already invoked his right to remain silent by stating that he did not "want nothing to say to anyone," he clearly and unambiguously did so in response to Chadborn's subsequent question. Because Chadborn and Watkins failed to "scrupulously honor[]" McCarthy's request to cut off questioning, his post-invocation statements must be suppressed. See Mosley, 423 U.S. at 103.[5]

The government argues that McCarthy's response was ambiguous because he was difficult to understand. However, McCarthy's answer, "No," was plain regardless of his heavy accent or tendency to mumble. See Rambo, 365 F.3d at 910 ("Although the context and nuances of a request to end questioning can create ambiguity, they cannot overcome a clear expression of the desire to remain silent."). The government also contends that McCarthy's "no" response was ambiguous because Chadborn posed his question in the negative. We disagree. A "reasonable police officer in the

---

[5] Because the government does not allege that the agents lawfully reinitiated questioning after McCarthy invoked his right to remain silent, we need not apply Mosley's four-factor test. See id. at 104-05; see also United States v. Alexander, 447 F.3d 1290, 1294 (10th Cir. 1996).

circumstances" presented could not have misinterpreted McCarthy's response.  See United States v. Nelson, 450 F.3d 1201, 1212 (10th Cir. 2006).  Nor can the government rely on McCarthy's post-invocation conduct.  "[A]n accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."  Smith v. Illinois, 469 U.S. 91, 100 (1984) (emphasis omitted).  Because McCarthy clearly invoked his right to remain silent before the agents elicited incriminating statements, the district court erred in denying his motions to suppress.

## III

For the foregoing reasons, we **REVERSE** the denial of McCarthy's motions to suppress and **REMAND** for further proceedings.


Entered for the Court


Carlos F. Lucero
Circuit Judge

United States v. McCarthy, 09-2259
**McWILLIAMS,** J. dissents.

At the outset of my dissent, I would note that when the inspector at the check point read the defendant his <u>Miranda</u> rights, the defendant neither invoked nor waived his right to remain silent. I also agree that after Agent Chadborn arrived, the defendant said, in essence, that he did not want to talk to "anyone about anything," which is a rather "clear and unambiguous" invocation of his <u>Miranda</u> right to remain silent. And that immediately thereafter the agent did inquire of the defendant "when they read you your rights...," at which point the defendant interrupted and said "what right" and "what rights do I have?" It was in that setting that the agent then proceeded to re-read the defendant his <u>Miranda</u> rights, after retrieving the defendant's glasses from his truck, the defendant apparently wanting to read the <u>Miranda</u> rights as the agent read them. Two times during the reading, the defendant asked if they could talk about the "details of his case" and the agent said they could not. At the conclusion of this re-reading the defendant then signed a written waiver of his <u>Miranda</u> rights. Certainly, reading to a detainee his <u>Miranda</u> rights does not in itself violate his right to remain silent. Accordingly, I would affirm.