ORDER AND JUDGMENT*
CARLOS F. LUCERO, Circuit Judge.
Michael Anthony McCarthy appeals the district court’s denial of his motions to suppress statements that he made during a police interrogation. Because law enforcement officers continued to question McCarthy after he unequivocally invoked his right to remain silent, we conclude that the statements must be suppressed. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.
I
In the early morning hours of August 15, 2008, McCarthy stopped his semitrailer at a New Mexico Motor Transportation Department inspection station. Officers inspecting the cargo inside found nearly 300 kilograms of marijuana. McCarthy was taken into custody and handcuffed to a bench inside the station. Sergeant Robert Barrera, the investigating officer, then read McCarthy his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Approximately two hours later, Border Operations Task Force Agents William Chadborn and Corey Watkins arrived at the scene. Barrera informed both agents that McCarthy had been read his Miranda rights. Watkins and Chadborn awoke a sleeping McCarthy, led him into an office, and began questioning him. During the interview, which was recorded, the following exchange took place:
AGENT CHADBORN: Alright ... uh ... Just wanted to let you know that ... uh ... Did you invoke your rights, or did you tell them that you didn’t want *791 to talk to anybody or that you wanted an attorney present or anything like that?
MR. MCCARTHY: Unintelligible.
AGENT CHADBORN: Okay. I, I, I can’t ... I’m having a hard time understanding you.
MR. McCARTHY: I said, I don’t want any ... I don’t want nothing to say to anyone.
AGENT CHADBORN: You don’t have anything to say to anybody?
MR. MCCARTHY: No.
AGENT CHADBORN: Okay. Did, did ... when they read you your rights ...
MR. McCARTHY: What rights?
AGENT CHADBORN: Did, did they read you your Miranda warnings?
MR. McCARTHY: What rights do I have?
AGENT CHADBORN: Okay. We’ll get through that right now.
Chadborn began to re-read McCarthy his Miranda rights, but was interrupted. Watkins, Chadborn, and McCarthy then discussed possible consequences of cooperating and refusing to cooperate with the investigation. When McCarthy attempted to speak about the details of his case, the agents repeatedly told him they could not discuss these matters unless McCarthy signed a form waiving his Miranda rights. Around six a.m., McCarthy signed this form and proceeded to make incriminating statements.[1] He was then transported to a Drug Enforcement Agency office for further processing.
A grand jury indicted McCarthy on one count of possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and one count of conspiracy to possess with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841 and 846. McCarthy filed three motions to suppress his statements to law enforcement, arguing that Chadborn and Watkins violated his Miranda rights.[2] The district court denied these motions. Although it found that “ordinary people and reasonable law enforcement officials would understand a clear articulation of the phrase T don’t want nothing to say to anyone’ as an invocation of the right to remain silent,” the court held that McCarthy’s articulation of this phrase was not clear and his subsequent response, “No,” to the question, ‘You don’t have anything to say to anybody?” was “somewhat ambiguous.” As a result, it concluded that McCarthy did not clearly and unambiguously invoke his right to remain silent and his post-waiver inculpatory statements were therefore admissible.
After his motions were denied, McCarthy entered into a plea agreement reserving the right to appeal the suppression ruling. The court accepted the plea and sentenced McCarthy to twenty-four months’ imprisonment. McCarthy timely appealed.
II
In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court’s factual findings unless they are clearly erroneous. See *792 United States v. Glover, 104 F.3d 1570, 1576 (10th Cir.1997). We review legal questions, including the issue of whether a defendant unambiguously asserted his right to remain silent, de novo. Cf. United States v. March, 999 F.2d 456, 459 (10th Cir.1993).
Under Miranda, an interrogation must immediately cease when an “individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent.” 384 U.S. at 473-74, 86 S.Ct, 1602.[3] Statements elicited by police after a defendant invokes this right are inadmissible. See Michigan v. Mosley, 423 U.S. 96, 103-04, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). To come within the ambit of this rule, however, a suspect’s invocation of his right to remain silent must be “clear and unambiguous.” United States v. Rambo, 365 F.3d 906, 910 (10th Cir.2004).[4]
In Rambo, we held that a defendant’s response of “No,” to the question, “Do you want to talk to me about this stuff?” constituted a clear and unambiguous invocation of his right to remain silent. 365 F.3d at 910. We reasoned that “[t]here is no nuance nor context to vary the unequivocal meaning of [the defendant’s] single word, monosyllabic response. His response, ‘No,’ could only mean an invocation of his right to remain silent.” Id.
The same is true here. McCarthy told Chadborn that he did not “want nothing to say to anyone.” Chadborn then clarified, ‘You don’t have anything to say to anybody?” McCarthy responded, “No.” Like the court in Rambo, we discern no nuance or ambiguity in this exchange. In short, no means no. If McCarthy had not already invoked his right to remain silent by stating that he did not “want nothing to say to anyone,” he clearly and unambiguously did so in response to Chadborn’s subsequent question. Because Chadborn and Watkins failed to “scrupulously hon- or! ]” McCarthy’s request to cut off questioning, his post-invocation statements must be suppressed. See Mosley, 423 U.S. at 103, 96 S.Ct. 321.[5]
The government argues that McCarthy’s response was ambiguous because he was difficult to understand. However, McCarthy’s answer, “No,” was plain regardless of his heavy accent or tendency to mumble. See Rambo, 365 F.3d at 910 (“Although the context and nuances of a request to end questioning can create ambiguity, they cannot overcome a clear expression of the desire to remain silent.”). The government also contends that McCarthy’s “no” response was ambiguous because Chad- *793 born posed his question in the negative. We disagree. A “reasonable police officer in the circumstances” presented could not have misinterpreted McCarthy’s response. See United States v. Nelson, 450 F.3d 1201, 1212 (10th Cir.2006). Nor can the government rely on McCarthy’s post-invocation conduct. “[A]n accused’s postre-quest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.” Smith v. Illinois, 469 U.S. 91, 100, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (emphasis omitted). Because McCarthy clearly invoked his right to remain silent before the agents elicited incriminating statements, the district court erred in denying his motions to suppress.
Ill
For the foregoing reasons, we REVERSE the denial of McCarthy’s motions to suppress and REMAND for further proceedings.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

. The facts as described by the dissent would have it appear as if an insignificant amount of time passed between Chadborn’s initial attempt to re-read McCarthy his Miranda rights and McCarthy's signing of the waiver form. In fact over thirty minutes passed, during which time McCarthy asked the agents at least twice to be put in jail. It is also worth noting that both Chadborn and Watkins already knew that McCarthy had been Miran-dized before they began questioning him.

. These motions were virtually identical in content.

. The government appears to argue that McCarthy was not under interrogation when he made his initial statements. Even if this were true, the protections of Miranda continue to apply because custodial interrogation was undoubtedly imminent. See Rambo, 365 F.3d at 909 (“For the protections of Miranda to apply, custodial interrogation must be imminent or presently occurring.’’ (citation omitted)).

. The Supreme Court recently reaffirmed this standard in Berghuis v. Thompkins, 560 U.S. -, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). Thompkins held that silence does not invoke the right to remain silent; instead, a suspect must “unambiguously” invoke his Miranda rights. 130 S.Ct. at 2260. The Court noted that Thompkins "would have voiced his right to cut off questioning” had he said "that he wanted to remain silent or that he did not want to talk to the police." Id. at 2260-61 (quotation omitted). Because Thompkins merely revivifies our existing precedent, it does not affect our reasoning in this case.

.Because the government does not allege that the agents lawfully reinitiated questioning after McCarthy invoked his right to remain silent, we need not apply Mosley’s four-factor test. See id. at 104-05, 96 S.Ct. 321; see also United States v. Alexander, 447 F.3d 1290, 1294 (10th Cir.2006).